UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

HORATIO AXEL LANIER,

    *Plaintiff*,

v.

PAUL C. SMEDBERG, *et al.*,

    *Defendants*.

Civil Action No. 23-02922 (AHA)

**Memorandum Opinion and Order**

Horatio Axel Lanier sues his former employer, the Washington Metropolitan Area Transit Authority ("WMATA"), WMATA's board of directors, and several current and former WMATA officers alleging disability, age, and sex discrimination in their decisions to not promote and to terminate him. Lanier seeks damages and reinstatement. The defendants move to dismiss and, for the reasons below, the Court grants their motion in part and denies it in part.

**I.**     **Background**[1]

According to the complaint and attached exhibits, Lanier began working at WMATA in 1995 and, most recently, was a senior staff member in the agency's civil rights office. *See* ECF No. 1 at 5; ECF No. 1-1 at 68. Lanier alleges he had a strong professional record, yet was denied promotional opportunities on multiple occasions. *See* ECF No. 1-1 at 70. In February 2019, Lanier started approved medical leave; in September 2019, he submitted a request to return to work for thirty hours per week and to transition back to full-time work in January 2020. *See id.* at 18–19,

---

[1] For the purpose of resolving this motion, the Court accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in favor of Lanier, as the plaintiff. *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015).

69. Lanier's proposed return date came and went without any communication from WMATA. *Id.* at 69. In October 2019, Lanier received a termination letter from WMATA. *See id.* at 68; ECF No. 1 at 5.

Lanier filed an administrative charge alleging discrimination and retaliation under the Americans with Disabilities Act ("ADA"), the Age Discrimination in Employment Act ("ADEA"), and Title VII of the Civil Rights Act of 1964. ECF No. 1-1 at 70. In March 2023, the Equal Employment Opportunity Commission ("EEOC") issued a determination finding "reasonable cause to believe that on around October 11, 2019, [WMATA] failed to accommodate [Lanier] and discharged him, based on his disability, in violation of the ADA." *Id.* at 5–6. The determination did not address Lanier's other claims. *Id.* The Department of Justice declined to file suit on Lanier's behalf and notified him of his right to sue. *Id.* at 64–65.

Lanier filed a pro se complaint against WMATA, its board of directors, and current and former WMATA officers asserting violations of the ADA, the ADEA, Title VII, and the District of Columbia Human Rights Act ("DCHRA"). The defendants have moved to dismiss all the claims.[2]

**II.    Discussion**

In reviewing a motion to dismiss for lack of subject matter jurisdiction or for failure to state a claim, the court must accept the factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Tanner-Brown v. Haaland*, 105 F.4th 437, 443 (D.C. Cir. 2024) (subject matter jurisdiction); *Ho v. Garland*, 106 F.4th 47, 50 (D.C. Cir. 2024) (failure

---

[2]   The defendants ask the Court to treat dismissal as conceded because Lanier filed his opposition one day late. ECF No. 25 at 2–4. The Court declines to impose that sanction on Lanier, who is acting pro se, and will consider his opposition. *See Cohen v. Bd. of Trs. of Univ. of D.C.*, 819 F.3d 476, 483 (D.C. Cir. 2016) (noting that "district courts may in their discretion consider alternatives [to merits dismissals] that are less harsh to parties").

to state a claim). To survive dismissal, a complaint must "state a claim to relief that is plausible on its face" and thereby "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). A pleading must offer more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

The court proceeds with extra care when a plaintiff is without counsel. "The pleadings of pro se parties are to be 'liberally construed,' and a pro se complaint, 'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Smith v. Scalia*, 44 F. Supp. 3d 28, 36 (D.D.C. 2014) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). At the same time, "[t]his benefit is not . . . a license to ignore the Federal Rules of Civil Procedure." *Id.* (quoting *Sturdza v. United Arab Emirates*, 658 F. Supp. 2d 135, 137 (D.D.C. 2009)). Pro se litigants must still establish subject matter jurisdiction and state a claim to survive dismissal. *Id.*

    **A. Lanier Cannot Seek Damages Against WMATA Under The ADA Or ADEA Due To Sovereign Immunity**

The Eleventh Amendment renders states "immune from suits brought in federal courts by [their] own citizens as well as by citizens of another State." *Morris v. WMATA*, 781 F.2d 218, 222–23 (D.C. Cir. 1986) (quoting *Edelman v. Jordan*, 415 U.S. 651, 663 (1974)). WMATA argues it is entitled to such immunity from Lanier's ADA and ADEA claims. The Court agrees.

WMATA was "created by a compact enacted by the Congress" and signed by the District, Maryland, and Virginia. *Jones v. WMATA*, 205 F.3d 428, 432 (D.C. Cir. 2000). The D.C. Circuit

3

has "consistently recognized" that "Virginia and Maryland each conferred its immunity upon WMATA, which therefore enjoys, to the same extent as each state, immunity from suit in federal court based on its performance of governmental functions." *Id.*; *see also Barbour v. WMATA*, 374 F.3d 1161, 1163 (D.C. Cir. 2004) ("WMATA, a mass transit system for the District of Columbia and surrounding suburban areas, was created by an interstate compact among Maryland, Virginia, and the District of Columbia, and enjoys the Eleventh Amendment immunity of the two signatory states."). This immunity "encompasses 'the hiring, training, and supervision of WMATA personnel.'" *Jones*, 205 F.3d at 432 (quoting *Burkhart v. WMATA*, 112 F.3d 1207, 1217 (D.C. Cir. 1997)). It follows that WMATA is immune from Lanier's employment claims under the ADA and ADEA, as a state would be. *See Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 374 (2001) (holding state sovereign immunity bars private individuals from bringing damages suits against states under Title I of the ADA, which concerns disability discrimination in employment); *Oviedo v. WMATA*, 948 F.3d 386, 393 (D.C. Cir. 2020) ("[W]e have held that because WMATA enjoys the same immunity from suit as its State signatories, WMATA is immune from ADEA liability."); *see also White v. WMATA*, 303 F. Supp. 3d 5, 10 (D.D.C. 2018) (concluding that "Plaintiff's suit for money damages under the ADA is barred by WMATA's Eleventh Amendment immunity").

In opposing dismissal, Lanier argues only that sovereign immunity does not bar injunctive relief against WMATA. ECF No. 23 at 5. Lanier's damages claims under the ADA and ADEA are accordingly dismissed.[3]

---

[3] Lanier contends that the defendants' alleged violations of the ADA violate a consent decree executed by the Department of Justice and WMATA. ECF No. 1 at 4; *see* ECF No. 1-1 at 46–58. The defendants argue Lanier lacks standing to enforce the consent decree because he is not a beneficiary under its terms and has "no legally protected interest" in enforcing its terms. ECF No. 18-1 at 4–5 (quoting *SEC v. Prudential Sec., Inc.*, 136 F.3d 153, 160 (D.C. Cir. 1998)). Lanier concedes this, acknowledging he lacks standing to enforce the consent decree and clarifying that

4

### B. Lanier Fails To State A Claim Under Title VII

Lanier's complaint asserts claims of sex discrimination and retaliation in violation of Title VII. ECF No. 1 at 3–4; *see* ECF No. 1-1 at 70. The defendants argue Lanier's complaint fails to state discrimination or retaliation claims. Even construing the complaint liberally, the Court agrees the complaint falls short of applicable pleading standards.

To plead discrimination under Title VII, a plaintiff must allege "(1) [he] is a member of a protected class; (2) [he] suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination." *George v. Leavitt*, 407 F.3d 405, 412 (D.C. Cir. 2005) (citations omitted). Here, Lanier identifies two types of adverse employment actions: decisions not to promote him and his termination.

As an initial matter, Lanier's allegations of discrimination in promotion decisions appear untimely on the complaint's face. Title VII requires a claimant to file an administrative complaint within 180 days of the allegedly unlawful conduct. 42 U.S.C. § 2000e–5(e)(1). The complaint does not provide the dates of the promotion decisions, but Lanier's pleadings state he was on leave from February 2019 to October 2019, when he was terminated. *See* ECF No. 1-1 at 18–19, 69. He filed his administrative charge just before the 180-day deadline as to his termination, but that would not encompass earlier promotion decisions. *See id.* at 68; ECF No. 1 at 5. Although Lanier has had the opportunity to respond to the defendants' argument that his failure-to-promote claims are untimely, one could not reasonably infer from his pleadings that the relevant promotion decisions happened

---

he raised the issue as an additional example of the defendants' alleged lack of ADA compliance. ECF No. 23 at 4.

within the 180-day period. Lanier's Title VII discrimination claim is therefore untimely insofar as it relies on the failure to promote him.[4]

In any event, Lanier has failed to plausibly allege a Title VII discrimination claim. Lanier does not allege specific facts showing he was terminated or denied promotions based on his sex. A Title VII plaintiff must allege "the unfavorable action gives rise to an inference of discrimination (that is, an inference that his employer took the action because of his membership in the protected class)." *Brown v. Sessoms*, 774 F.3d 1016, 1022 (D.C. Cir. 2014) (quoting *Forkkio v. Powell*, 306 F.3d 1127, 1130 (D.C. Cir. 2002)). "A plaintiff can raise an inference of discrimination by showing 'that [he] was treated differently from similarly situated employees who are not part of the protected class.'" *Id.* (quoting *George*, 407 F.3d at 412).

The complaint does not satisfy these standards. Lanier does not allege any facts suggesting he was terminated based on his sex. Nor does he provide any other supporting context clues—for example, that other male employees were terminated in similar fashion, or that female employees were treated more favorably in similar circumstances. *See Slate v. Pub. Defender Servs. for D.C.*, 31 F. Supp. 3d 277, 298 (D.D.C. 2014) (dismissing for failure to state a claim where plaintiff did

---

[4] The defendants argue in the alternative that the federal claims are untimely because the complaint was filed more than ninety days after Lanier received his notice of right to sue. ECF No. 18-1 at 14–15. The defendants point to a statement in Lanier's pre-motion filing that references "receipt" of the notice on June 29, 2023. *See* ECF No. 16 at 3. Lanier responds that this was a "clerical drafting error"—and indeed, his complaint states that he received the notice on July 5, 2023, which is fewer than ninety days before he filed the complaint. ECF No. 23 at 8; ECF No. 1 at 5. Accordingly, it is not "clear from the face of the complaint" that Lanier's complaint was untimely. *See Smith-Haynie v. District of Columbia*, 155 F.3d 575, 578 (D.C. Cir. 1998); *see also Bregman v. Perles*, 747 F.3d 873, 875 (D.C. Cir. 2014) ("[B]ecause statute of limitations issues often depend on contested questions of fact, dismissal is appropriate only if the complaint on its face is conclusively time-barred." (alteration in original) (citation omitted)).

The defendants also contend that Lanier's DCHRA claim is untimely because the complaint was filed more than one year after the alleged unlawful acts. ECF No. 18-1 at 15. The Court dismisses Lanier's DCHRA claim on other grounds, so it need not reach the timeliness question.

"not plead facts to show differential treatment based on gender"); *see also Redmon v. YMCA of Metro. Wash.*, 417 F. Supp. 3d 99, 104 (D.D.C. 2019) (reasoning that, if the defendant employer "had some discriminatory bias against men, one would expect other men to have suffered some adverse employment consequences," and "[t]hat this did not happen is further reason to conclude that [the plaintiff] has not pleaded that the [defendant] terminated him because of some animus against men"). To the contrary, Lanier describes a female colleague who "was similarly terminated in January 2019" in a manner that he believes was wrongful and orchestrated by the same decisionmaker. ECF No. 1-1 at 69; ECF No. 23 at 7–8; *see McGunagle v. Mayorkas*, No. 22-cv-0126, 2023 WL 1438374, at *3 (D.D.C. Feb. 1, 2023) (concluding plaintiff failed to state a claim for "anti-male discrimination" where supervisors had taken disciplinary action against both men and women).

The complaint's allegations concerning failed promotions are similarly insufficient. While Lanier describes his own qualifications and three positions WMATA gave to female employees, he does not provide any details about the qualifications of those who were offered the positions, let alone specific allegations showing they were less qualified than him. ECF No. 1-1 at 70; *see Amissah v. Gallaudet Univ.*, No. 19-cv-679, 2019 WL 13277397, at *5 (D.D.C. Dec. 23, 2019) (concluding plaintiff failed to state a claim for gender discrimination where he asserted only that he was "evidently qualified" for the positions, but "provided no factual allegations to support this claim nor to show that he was more qualified than those selected" (citation omitted)); *Webster v. Haaland*, No. 23-cv-3050, 2024 WL 4240286, at *5 (D.D.C. Sept. 19, 2024) ("Plaintiff does not dispel the obvious alternative explanation that the agency hired someone whose qualifications it preferred, and his conclusory allegations of racial discrimination stop[] short of the line between possibility and plausibility of entitlement to relief." (alteration in original) (internal quotation

marks omitted) (quoting *Twombly*, 550 U.S. at 557)). Indeed, courts have rejected such claims even when they include comparisons to the qualifications of the selected candidate that are not supported by specific allegations. *See Krishnan v. Foxx*, 177 F. Supp. 3d 496, 506–07 (D.D.C. 2016) (finding insufficient plaintiff's allegations that he was "equally or better qualified," had "more education," more "relevant experience," and more "general qualifications" than the selected candidate (citation omitted)). Lanier's "bare assertions" of discrimination are "not entitled to be assumed true." *Iqbal*, 556 U.S. at 681.

The complaint also fails to state a retaliation claim under Title VII. To plead retaliation, a plaintiff must allege "(1) he engaged in protected activity; (2) he was subjected to an adverse employment action; and (3) there was a causal link between the protected activity and the adverse action." *Hamilton v. Geithner*, 666 F.3d 1344, 1357 (D.C. Cir. 2012) (quoting *Woodruff v. Peters*, 482 F.3d 521, 529 (D.C. Cir. 2007)). The pleadings allege Lanier "raised concerns" and made "professional objections" about topics like recordkeeping, protection of confidential information, and investigation practices, and that those concerns were "routinely ignored" or met with "no action on any of the issues raised." ECF No. 1-1 at 69–70. However, these communications were not complaints about possible discrimination that are protected activity within the meaning of Title VII—they appear to be conversations Lanier had as part of his position and responsibilities within the civil rights office. *See Hajjar-Nejad v. George Washington Univ.*, 37 F. Supp. 3d 90, 143–46 (D.D.C. 2014) (collecting cases and dismissing retaliation claim where plaintiff submitted numerous communications to his former employer complaining of alleged failures to follow policy, discrimination, and mistreatment, but with no mention of discrimination or retaliation on a protected basis); *cf. Omwenga v. United Nations Found.*, 244 F. Supp. 3d 214, 219 (D.D.C. 2017) (noting, in False Claims Act retaliation context, that when a plaintiff's "normal job responsibilities

8

include investigating and reporting issues, plaintiff 'must overcome the presumption that they are merely acting in accordance with their employment obligations'" (quoting *United States ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1261 (D.C. Cir. 2004))). Moreover, even assuming these conversations included protected activity, Lanier has not pled a causal link between that protected activity and any adverse action. Lanier does not plausibly allege facts to support a direct connection between these communications, nor does he lay out the timing of the events such that one could reasonably infer "the employer had knowledge of the employee's protected activity, and that the adverse personnel action took place shortly after that activity." *Mitchell v. Baldrige*, 759 F.2d 80, 86 (D.C. Cir. 1985).

Lanier has accordingly failed to state claims for sex discrimination or retaliation under Title VII.

### C. Lanier Cannot Pursue ADA, ADEA, Or Title VII Claims Against The Individual Defendants Because The Statutes Do Not Provide Individual Liability

In addition to WMATA, Lanier's complaint names several current and former officers of the agency. The defendants argue the causes of action identified in the complaint—the ADA, ADEA, Title VII, and DCHRA—provide for employer liability, not individual liability. That point is well taken.

Liability under the ADA, the ADEA, and Title VII extends solely to "covered entities," i.e., "employers" as specifically defined by statute, and those statutory definitions do not include individual employees. 42 U.S.C. § 12111(5)(A) (ADA) (defining employer as "a person engaged in an industry affecting commerce who has 15 or more employees"); 29 U.S.C. § 630(b) (ADEA) (defining employer as "a person engaged in an industry affecting commerce who has twenty or more employees"); 42 U.S.C. § 2000e(b) (Title VII) (defining employer as "a person engaged in an industry affecting commerce who has fifteen or more employees"). As the D.C. Circuit has

9

recognized, the statutory language allows an employer to become liable based on the actions of its agents, but it remains the employer "who is alone liable for a violation" and the individual "cannot be held liable in his personal capacity." *Gary v. Long*, 59 F.3d 1391, 1399 (D.C. Cir. 1995). Lanier does not dispute this, arguing only that he named the individuals because they were "employees or governing agents of WMATA." ECF No. 26 (emphasis omitted). Accordingly, any such claim against individual officers under the ADA, ADEA, or Title VII "essentially merges with [Lanier's] claim against WMATA." *Gary*, 59 F.3d at 1399.

### D.  Lanier's DCHRA Claim Fails Because The DCHRA Does Not Apply To WMATA

WMATA argues that Lanier's DCHRA claim against WMATA and its current and former officers must be dismissed because the DCHRA does not apply to WMATA. Lanier's opposition does not address application of the DCHRA to WMATA. WMATA's argument is well founded.

As explained, WMATA was created by interstate compact between three jurisdictions. *Jones*, 205 F.3d at 432. As courts have observed, this means "one signatory may not impose its legislative enactment upon the entity created by it without the express consent of the other signatories and of the Congress of the United States." *Lucero-Nelson v. WMATA*, 1 F. Supp. 2d 1, 7 (D.D.C. 1998) (citing *Off. & Pro. Emps. Int'l Union, Loc. 2 v. WMATA*, 724 F.2d 133, 139 (D.C. Cir. 1983)); *C.T. Hellmuth & Assocs., Inc. v. WMATA*, 414 F. Supp. 408, 409 (D. Md. 1976) (recognizing that it "appears settled that one party may not enact legislation which would impose burdens upon the compact absent the concurrence of the other signatories"). Courts have accordingly recognized that the DCHRA does not apply to WMATA. *Lucero-Nelson*, 1 F. Supp. 2d at 7 ("There is ample precedent holding that WMATA is not subject to the Act on the grounds that WMATA is an interstate compact agency and instrumentality of three separate jurisdictions—Virginia, Maryland, and D.C."); *Taylor v. WMATA*, 109 F. Supp. 2d 11, 18 (D.D.C. 2000) ("It is well-established that WMATA is not subject to the DCHRA because WMATA is an interstate

10

compact agency and instrumentality of three separate jurisdictions."); *see also, e.g.*, *Moskowitz v. WMATA*, No. 20-cv-1429, 2021 WL 6841843, at *3 (D.D.C. Mar. 10, 2021) ("And, since WMATA was created by an interstate compact, it is not subject to the DCHRA.").

Because the DCHRA does not apply to WMATA, Lanier's DCHRA claim against the agency is dismissed.[5]

### E. Lanier Has Stated An ADA Claim For Injunctive Relief Against Some Individual WMATA Defendants In Their Official Capacities

Although Lanier's claims for damages cannot survive, he also seeks injunctive relief—namely, reinstatement to the position he was terminated from. ECF No. 1 at 6; ECF No. 23 at 5. Under the doctrine of *Ex parte Young*, 209 U.S. 123 (1908), a federal court "is not barred by the Eleventh Amendment from enjoining state officers from acting unconstitutionally, either because their action is alleged to violate the Constitution directly or because it is contrary to a federal statute or regulation that is the supreme law of the land." *Vann v. Kempthorne*, 534 F.3d 741, 749 (D.C. Cir. 2008) (citation omitted). The court "need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Id.* at 750 (alteration in original) (quoting *Verizon Md. Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645 (2002)). Courts have applied this doctrine to ADA and ADEA claims. *See Garrett*, 531 U.S. at 374 n.9 (noting that private individuals can enforce the ADA through suits for injunctive relief under *Ex parte Young*); *Thomas v. WMATA*, 305 F. Supp. 3d 77, 87–88 (D.D.C.

---

[5] To the extent Lanier asserts his DCHRA claim against individual officers, such officers would also be immune from suit because they were exercising their discretionary governmental function in making employment decisions. *See Jones*, 205 F.3d at 432 (noting "WMATA's governmental function immunity encompasses the hiring, training, and supervision of WMATA personnel" (quoting *Burkhart*, 112 F.3d at 1217)); *Moskowitz*, 2021 WL 6841843, at *4 (concluding WMATA supervisor was "immune from suit for exercising his discretion—within the scope of his official duties as plaintiff's direct supervisor—to terminate plaintiff's employment").

2018) (collecting cases and noting that "other circuit courts have persuasively applied *Ex parte Young* to the ADEA").

The defendants rely on out-of-circuit authority to argue Lanier "cannot allege any ongoing violation of the ADA or ADEA." ECF No. 25 at 10 (emphasis omitted) (citing *Hilburn v. Dep't of Corr.*, No. 07-cv-06064, 2010 WL 703202 (D.N.J. Feb. 23, 2010); *Nelson v. Univ. of Tex. at Dall.*, 491 F. Supp. 2d 672 (N.D. Tex. 2007)). But as "numerous decisions" have recognized, when "a plaintiff seeks reinstatement with a former employer . . . the former employee does have standing to seek prospective relief." *Tolton v. Day*, No. 19-cv-945, 2020 WL 2542129, at *37 (D.D.C. May 19, 2020) (omission in original) (citation omitted) (collecting cases); *see also Thomas*, 305 F. Supp. 3d at 88 (allowing ADEA claims for prospective injunctive relief against individual WMATA defendants to proceed under *Ex parte Young*); *Nelson v. Univ. of Tex. at Dall.*, 535 F.3d 318, 324 (5th Cir. 2008) ("[W]e conclude that, based on our precedent and precedent from a majority of the circuits, a request for reinstatement is sufficient to bring a case within the *Ex parte Young* exception to Eleventh Amendment immunity, as it is a claim for prospective relief designed to end a continuing violation of federal law."). Lanier's request for reinstatement constitutes prospective injunctive relief under the ADA and ADEA.

As with his Title VII claims, however, Lanier has failed to state an ADEA claim. He has not alleged that his termination had anything to do with his age, nor is there any indication that he engaged in protected activity related to age discrimination before his termination. Lanier therefore has not stated a claim under the ADEA. *See Dismukes v. U.S. Dep't of Veterans Affs.*, No. 23-cv-02259, 2025 WL 343190, at *6 (D.D.C. Jan. 30, 2025) (dismissing ADEA claim where plaintiff "invokes his own race, sex, and age, and broadly contends that Defendants' actions were taken because of those characteristics," but "does not explain why or how he believes his protected status

to be the motivation behind his non-selection"); *see also Greer v. Bd. of Trs. of Univ. of D.C.*, 113 F. Supp. 3d 297, 311 (D.D.C. 2015) (dismissing ADEA claim and noting that "the unavailability of details does not excuse Plaintiff from alleging, on information and belief if necessary, the general sequence of events and basic facts").

That leaves the ADA. To state an ADA discrimination claim, a plaintiff must allege "he had a disability within the meaning of the ADA, that he was 'qualified' for the position with or without a reasonable accommodation, and that he suffered an adverse employment action because of his disability." *Swanks v. WMATA*, 179 F.3d 929, 934 (D.C. Cir. 1999); *see also, e.g.*, *Blackwell v. SecTek, Inc.*, 61 F. Supp. 3d 149, 156 (D.D.C. 2014). Lanier does not identify his disability, but he alleges he was on approved ADA disability leave preceding termination and the defendants do not dispute that he had a qualifying disability under the ADA. ECF No. 1-1 at 69. In September 2019, Lanier requested to return to work for thirty hours per week; then, in October 2019, he received a letter "from Medical Services requesting additional information" and was terminated shortly thereafter. *Id.*; *see also id.* at 18–19. At the pleading stage, these allegations give rise to a plausible inference that Lanier's termination could have been motivated by discriminatory animus based on his disability. *See, e.g.*, *Epps v. Potomac Elec. Power Co.*, 389 F. Supp. 3d 53, 56–57 (D.D.C. 2019) (concluding plaintiff had sufficiently stated ADA discrimination claim where she alleged that she attempted to return to work after being placed on long term disability leave, but employer failed to reinstate and ultimately terminated her).

Lanier also alleges the defendants failed to provide a reasonable accommodation. *See* ECF No. 1 at 4. A failure to accommodate claim requires a plaintiff to allege "(1) they are a qualified individual with a disability; (2) their employer had notice of their disability; and (3) their employer denied [their] request for a reasonable accommodation." *Pappas v. District of Columbia*, 513 F.

Supp. 3d 64, 86 (D.D.C. 2021) (citing *Ward v. McDonald*, 762 F.3d 24, 31 (D.C. Cir. 2014)). Lanier has alleged, as required, that he was disabled, that the defendants had notice of his disability, and that he requested a reasonable accommodation, including a reduced work schedule, but did not receive that accommodation and instead was abruptly terminated. *See* ECF No. 1-1 at 18–19, 68–70. Lanier has accordingly stated an ADA claim for failure to provide a reasonable accommodation. *See, e.g.*, *Hollabaugh v. Off. of the Architect of the Capitol*, 847 F. Supp. 2d 57, 65 (D.D.C. 2012) (concluding plaintiff stated a claim for failure to accommodate where she alleged "that she represented to her supervisors that she was in need of reasonable accommodations under the ADA, and that she was terminated shortly thereafter," and reasoning that "[a]t this phase of the litigation, nothing more is required").

Lanier has also stated a claim for retaliation under the ADA, which requires alleging that he engaged in protected activity, that he was subjected to an adverse action by his employer, and that there was a causal link between the two. *Doak v. Johnson*, 798 F.3d 1096, 1107 (D.C. Cir. 2015). Lanier has met the first two elements because requesting a reasonable accommodation is protected activity and termination is an adverse action. *See Solomon v. Vilsack*, 763 F.3d 1, 15 (D.C. Cir. 2014); *Kealy v. Anadolu Agency NA, Inc.*, No. 24-cv-352, 2025 WL 1575703, at *5 (D.D.C. Feb. 25, 2025). As for the third element, "temporal proximity can support an inference of causation," but "only where the two events are 'very close' in time." *Congress v. District of Columbia*, 277 F. Supp. 3d 82, 90 (D.D.C. 2017) (quoting *Woodruff*, 482 F.3d at 529). Lanier alleges that he requested a reasonable accommodation on September 24, 2019, requested a status update on October 8, and was terminated just days later on October 11. *See* ECF No. 1-1 at 69. These allegations are sufficient to state a claim for retaliation under the ADA. *See, e.g.*, *McNair v. District of Columbia*, 213 F. Supp. 3d 81, 90 (D.D.C. 2016) (concluding plaintiff stated an ADA

retaliation claim where she submitted a written justification for her request for a modified work schedule, which was denied, and then she was terminated just over a month later).

Having found Lanier has stated claims for injunctive relief under the ADA, the Court must determine which, if any, of the named WMATA officials and board members are properly sued. "In this District, the general rule 'is that individuals not named in the EEOC charge may not be sued in a subsequent civil action unless they have been given actual notice of the EEOC proceeding or have an identity of interest with the party or parties sued before the EEOC.'" *Clay v. Howard Univ.*, 82 F. Supp. 3d 426, 433–34 (D.D.C. 2015) (quoting *EEOC v. Metzger*, 824 F. Supp. 1, 3–4 (D.D.C. 1993)). Neither the board itself nor the board members were named in Lanier's EEOC charge. *See* ECF No. 1-1 at 68–70. While Lanier speculates that the board members knew or should have known of the charge, his own August 2023 letter to the board, after his EEOC charge had been resolved, expressed that he had "reason to believe that none of you are aware of the finding of the [EEOC] that I was unlawfully terminated from my position." *Id.* at 15. And Lanier has not sufficiently alleged an identity of interest for the individual board members. *See Metzger*, 824 F. Supp. at 4 (dismissing claims against law firm partner where partner lacked sufficient identity of interest with the partnership and plaintiff "provided no evidence that [the partner] was given the opportunity to participate in the EEOC proceedings or that [the partner] was mentioned in the details of the charge before the EEOC"). Lanier may not sue the individual board members for injunctive relief under the ADA.

That leaves WMATA officials. Paul Wiedefeld (general manager and CEO), Patricia Lee (general counsel), Tawnya McGee (chief human resources officer), and Franklin Jones (chief of the office of fair practices), were referenced in the EEOC charge. ECF No. 1-1 at 69. Standing alone, this may not suffice to put them on notice. *See Clay*, 82 F. Supp. 3d at 434 (rejecting

15

argument that "simply using [the defendant's] name in the EEOC charge sufficed"). But given these defendants' particular positions, it is fair to infer they had notice of Lanier's EEOC charge or had a sufficient identity of interest with WMATA, the party sued. *See Campbell v. Washington*, No. 76-cv-1200, 1979 WL 15386, at *2 (D.D.C. Mar. 28, 1979) (holding that director of agency had "a substantial identity of interest with the department"); *see also Anyaibe v. Gilbert Sec. Serv., Inc.*, No. 94-cv-2377, 1995 WL 322452, at *4 (D.D.C. May 18, 1995) (holding claim could proceed against defendant who was named in discrimination charge and "arguably had an identity of interests" with company as vice president and general manager representing company before EEOC).

It is unclear if defendants Randy Clarke (Wiedefeld's successor as general manager and CEO) or John Kuo (former executive vice president) had notice of the charge, but they also bear sufficient identities of interest with WMATA. *See Campbell*, 1979 WL 15386, at *2. Their dates of employment are ultimately irrelevant because Lanier's claims for prospective injunctive relief may proceed against these defendants only in their official capacities—so former employees' successors are automatically substituted as defendants in their official capacities under Federal Rule of Civil Procedure 25(d). Clarke is substituted for Wiedefeld in his official capacity; subsequent submissions should also bear the substituted names of the officials who have succeeded McGee, Jones, and Kuo.

### III. Conclusion

For these reasons, the defendants' motion to dismiss, ECF No. 18, is granted in part and denied in part. The motion to dismiss is denied as to Lanier's ADA official-capacity claims for discrimination, failure to accommodate, and retaliation, but only for prospective injunctive relief in the form of reinstatement, against Clarke (substituted for Wiedefeld), Lee, and the successors in office of McGee, Jones, and Kuo. In all other respects, the motion to dismiss is granted. The

16

remaining defendants shall file an answer or otherwise respond to the surviving claims by August 12, 2025.

_____

AMIR H. ALI
United States District Judge

Date:   July 29, 2025